[Civ. No. 20339. First Dist., Div. One. May 3, 1963.]

ROBERT E. HATCH, Plaintiff and Appellant, v. STANLEY F. BUSH et al., Defendants and Respondents.

Julian D. Brewer for Plaintiff and Appellant.

M. Mitchell Bourquin and John D. Costello for Defendants and Respondents.

BRAY, P. J.—Plaintiff appeals from judgment based on order granting summary judgment.

### QUESTION PRESENTED

Was any triable issue of fact presented?

### RECORD

Plaintiff's complaint alleges that he is an attorney at law, and that within two years preceding the commencement of

the action defendants became indebted to him in the sum of $20,000 as the reasonable value of services rendered by plaintiff "to and for the use and benefit of defendants and at their special instance and request." Defendants' demurrer to the effect that the alleged cause of action had been adjudicated by the San Francisco Superior Court was overruled. Defendants then answered, denying generally and specifically the allegations of the complaint other than the allegation that plaintiff is an attorney. As a separate defense, it was alleged that defendants are the grandnephew and grandniece respectively and the sole next of kin and heirs at law of Annie M. Gudehus, now deceased; that "as such, defendants employed plaintiff as an attorney to assemble the property of the decedent and to prepare, initiate and conduct the probate of the estate of said Annie M. Gudehus, of which defendants were appointed, qualified and acting as co-administrators thereof; that at no time did defendants, or either of them, prior to the death of decedent or subsequent thereto, employ plaintiff to perform or render, and at no time did plaintiff perform or render, any other or legal services for them, or either of them"; that on January 18, 1960, the first and final account, report and petition for distribution in that estate was presented to the probate court; that plaintiff at the hearing thereof appeared and applied for attorneys' fees and compensation for services rendered to the defendants as co-administrators and in the probate of said estate; that said court awarded plaintiff the sum of $1,251.26 in full for such services; that said sum was paid by "estate check" to plaintiff upon the account and assets of said estate; that the order of the probate court has become final.

Thereafter defendants made demand upon plaintiff for a bill of particulars, "including detailed statement of the date and place of the services alleged, the time consumed thereupon, and the reasonable value of each item thereof."

Plaintiff filed a "Response to Alleged 'Demand for Bill of Particulars'" in which he stated that section 454, Code of Civil Procedure, makes no provision for anything mentioned in the demand, providing only that defendants are entitled to a "copy of the account" if one is sued on. "None is, neither has a demand been made for a copy thereof." If it be construed that a demand for copy of account has been made, it is impossible to furnish such copy as there never has been an original. If the demand be construed as a proper demand under the section, the following is the best possible response:

"Stanley F. Bush and Norma Joseph, in account with Robert E. Hatch, Attorney at Law—To legal services rendered ... $20,000.00."

Upon defendants' motion the court ordered plaintiff to serve a further bill of particulars "specifying with particularity the items or matters upon which services are to be charged to defendants by plaintiff, the time extended upon each and all of said items or matters, and the reasonable value of the services upon each."

In response, plaintiff submitted a verified "Amendment to Bill of Particulars" in which he reiterated his statement that section 454 does not provide for a bill of particulars and that it is impractical to render such a bill in this case. He then submitted the following:

Item 1: Commencing November 16, 1958, to and including December 4, 1958, when defendants were appointed administrators of the Gudehus estate plaintiff rendered legal services to defendants of "legal and other nature." At the request of defendant plaintiff examined the affairs of said Annie M. Gudehus while she was in the hospital "in the light of defendants' interests therein . . . together with the personal and business necessities of said Annie M. Gudehus while still alive," upwards of 50 hours, which at $50 per hour would exceed $2,500.

Item 2: "From the commencement of said probate proceedings, by filing of the petition for appointment of administrators to the point of completion of the probate of said estate, plaintiff did ninety per cent of the work ordinarily performed by the personal representative of the estate and for the fees contemplated by Probate Code 900, et seq. . . . [S]aid fees properly computed would amount to approximately $7,000.00 and on that basis plaintiff would be entitled to the additional sum of $6,300.00."

Item 2(a): "The foregoing item, alternately computed on other than the percentage basis prescribed by the Probate Code," would be in excess of $6,300.

Item 3: "[P]laintiff completely probated said estate as the attorney for the administrators with the exception of the pro forma appearance on the presentation of the final papers and thereby did ninety-nine per cent of the legal work" entitling him to 99 per cent of $7,000 or $6,930.

Item 3(a): The foregoing item, computed on other than the percentage basis prescribed by the Probate Code, based upon the work done, is in excess of $6,930.

Item 4: Said defendants as administrators were entitled to an allowance for extraordinary services in said estate "such as collection of disputed accounts, performance of services as special administrators . . ." Plaintiff did all the work for which such extra allowance was available. Defendants did not apply for it, because they were the sole heirs of the estate and the income tax thereon would be greater than the credit they would receive from inheritance and estate taxes. Plaintiff did all of this work, devoting upwards of 40 hours thereto, which at $25 per hour reasonably entitled him to $1,000.

Item 5: Plaintiff is entitled to the reasonable value of extraordinary service rendered, undertaking and collecting an outlawed note of $4,000 owed the estate; arranged for, studied and helped prepare the tax reports for federal estate, state inheritance and income taxes and other services of a legal nature, did all the legal services in having defendants appointed special administrators and with the special administration of said estate, devoting in excess of 100 hours thereto, entitling him at $50 per hour to an additional $5,000.

Thereafter defendants moved for summary judgment on the ground (a) that the services for which plaintiff was attempting to charge defendants were rendered in the representation of defendants in the probate of the estate. (b) Following the substitution of plaintiff by another as attorney for the administrators, plaintiff served and filed in the proceeding a request for special notice as provided by sections 1200-1202, Probate Code. (c) Notice was given him of the time set for the hearing of the final account of the administrators. Plaintiff appeared at the hearing, and "pled" his claim for ordinary and extraordinary compensation for these services. (d) that plaintiff's claim was heard, determined and adjudicated by the probate court in the order settling the final account which order has become final. (e) That plaintiff's compensation for said services was fixed by the probate court and paid by check of the administrators to plaintiff. Said check has not been presented for payment. (f) That the order of said probate court is res judicata of plaintiff's right to compensation for his services.

On the motion the declaration under penalty of Attorney Costello was presented. It states that on June 6, 1959, he was substituted for plaintiff as attorney for the administrators; that from that date he assumed the representation of and legal service to the administrators and continued so to

serve until the entry of the decree of final discharge; that defendants on November 17, 1958, were appointed special administrators of the estate and served as such until December 4, 1958, when defendants were appointed and qualified as administrators of the estate. The declaration then refers to plaintiff's request for notice in the estate, the giving to plaintiff of notice of the hearing of the administrators' final account; that on the hearing plaintiff appeared, was sworn and testified to all of the services specified in the bill of particulars and its amendment, and asked for $10,000 in compensation of his services, that on January 22, 1960, the court entered its order allowing and apportioning the attorneys' fees of the successive attorneys for said administrators, certified copy of which order is attached to the declaration. Attached, too, is a certified copy of the decree of final discharge. It is further stated that pursuant to the probate court's order an administrator's check for $1,251.26 was sent to plaintiff in payment of the fees ordered; that this check has not been presented to the bank for payment.

Also presented to the court was the declaration under penalty of Paul E. Springer, a court reporter, containing a transcript of the testimony of plaintiff given on the hearing of the administrators' first and final account. Therein plaintiff testified that he was the attorney for Annie Gudehus for 30 years. All that she possessed was acquired through some estate litigation which he had conducted for her many years ago. Shortly before November 17, 1958, defendants called plaintiff telling him of her illness. Plaintiff met defendants at the hospital where she was in a coma. She died shortly afterwards. ". . . we did whatever was necessary at that time; I think I even paid the medical bill out of my pocket. We went through all of her papers and records. . . . There was a tremendous volume of papers and documents . . . all of which I had to process." Defendants "were very cooperative, but they had had no experience in such matters, and I had to do the bulk of it. We had to spend a good deal of time looking for bank accounts . . . there was over $70,000 in savings accounts and a lot of records indicating that she had other accounts. I went all over San Francisco from the Mission to the Park District checking on old accounts to find out what was left, and finally located them all and consolidated them and brought everything up to date. She had several safe deposit boxes which we had to go through and get all of her things out of. I spent a great deal of time, and the first thing that

had to be done was to arrange for taking care of the real estate; there were three parcels, all very old and not in very good shape. I personally attended to all of the insurance, I had the properties appraised and had new policies issued. I personally arranged with Mr. Cassassa . . . to take over the collection of the rents and the payment of the taxes. I was in constant communication with these people and with their cooperation we did whatever was possible. The only thing that they were able to do was to attend to the rehabilitation of these buildings . . . I did everything else . . . with the exception of looking after the work in redoing the buildings . . . I did all of the work of the administrators. . . ." There was a note for $4,000 or $5,000 which decedent held from a lady in San Mateo County. It was outlawed. "I made about five separate trips down there and collected this money, with the statute of limitations not being raised." There was a note in Lake County "to which I gave attention in the matter of trying to get it collected . . . I did a great deal of work; the clients did whatever they could. By June of this year we had given extraordinary attention to this estate; I had prepared an inventory for them, which was part of my job, a complete résumé of the estate, including the names of the tenants, the rentals they were paying, a resume of the savings accounts, promissory notes and insurance, had all the insurance policies put in separate envelopes and identified. By that time I had prepared the Federal Tax Return, and I had also prepared a petition for preliminary distribution in order that they could draw some money out of the estate without awaiting the final approval of the Estate Tax Return, so that at the time that Mr. Costello replaced me in this, everything had been done down to the last dying gasp of the estate. The only thing that was left was to await the approval of the Federal Tax Return and file the petition for final distribution . . . In my opinion . . . between the statutory and the extra services performed by the two attorneys, I think that $15,000 would be a very minimum allowance against over $300,000 that has come in . . . in fairness to myself, I should be allowed $10,000." The court then asked, "For extraordinary services?" Plaintiff replied, "No, combining my part of the statutory plus the extraordinary plus doing about 90% of the work for the two administrators."

The only showing on the motion made by plaintiff was his declaration under penalty. He "categorically and unequivocally" denied the assertions in Costello's declaration to the

effect that plaintiff appeared at the hearing of the final account and testified to the rendition by him of *all* of the services specified in the amended bill of particulars. He further states that the court's order settling first and final account and decree of distribution does not recite that he "appeared" as a party, "only as attorney for the administrators prior to the filing of the Substitution of Attorneys . . ." After stating that the "only *adjudication*" (italics his) in the order mentioning him is "that 'of the statutory attorneys fee due herein of $5,005.03, the Administrators pay the sum of Twelve hundred fifty-one & 26/100 Dollars ($1,251.26) hereby awarded to the said Robert E. Hatch, Esq. . . . '" He then states that it is evident from the order "(a) Said probate court did not have jurisdiction over me *or* my claims against my clients (that is, my *former* clients.) [Italics his.] (b) Said court did not think it had such jurisdiction, and (c) Said order or decree did not attempt to adjudicate that it did." He then states "In particular" that he did not "appear" in said proceedings at any time, file any paper or pleading putting before the court any claim of his to anything nor submit himself nor any claim of his to the jurisdiction of the probate court. Plaintiff states that he has "not received any payment of any kind for the services rendered to the defendants in this action, as embraced by my complaint on file. . . ." He then asserts that for the sole purpose of preventing plaintiff from obtaining payment for his services defendants and Attorney Costello conspired, and by trick and device, deliberately refrained from petitioning for any allowance in the estate for extraordinary services, knowing that as plaintiff was no longer the attorney for the administrators, there was no way he could ask for compensation for extraordinary services and no way the court could allow them.

## SUMMARY JUDGMENTS

Section 437c, Code of Civil Procedure, provides the procedure for summary judgments: ". . . if it is claimed the action has no merit . . . on motion . . . supported by affidavit of any person or persons having knowledge of the facts . . . judgment may be entered, in the discretion of the court unless the other party, by affidavit or affidavits shall show such facts as may be deemed by the judge hearing the motion sufficient to present a triable issue of fact." "The procedure is drastic and should be used with caution in order that it may not become a substitute for existing methods in

the determination of issues of fact." (*Eagle Oil & Refining Co.* v. *Prentice* (1942) 19 Cal.2d 553, 556 [122 P.2d 264]; see also *Nini* v. *Culberg* (1960) 183 Cal.App.2d 657 [7 Cal. Rptr. 146].) "Affidavits of the moving party must be strictly construed and those of his opponent liberally construed, must be accepted as true and need not necessarily be composed wholly of strictly evidentiary facts. (*Eagle Oil & Refining Co.* v. *Prentice,* 19 Cal.2d 553, 556 [122 P.2d 264].) Further, as stated in the *Eagle Oil & Refining Co.* case (pp. 555-556): 'At the outset it should be observed that there are several pertinent fundamental principles which should be observed in the application of and procedure under section 437c. The issue to be determined by the trial court in consideration of a motion thereunder is whether or not defendant has presented any facts which give rise to a triable issue or defense, and not to pass upon or determine issue itself, that is, the true facts in the case. [Citations.] ....' " (*Nini* v. *Culberg, supra,* 183 Cal.App.2d at p. 661.)

" '. . . But, on the other hand, as we stated in *Burke* v. *Hibernia Bank,* 186 Cal.App.2d at page 744 [9 Cal.Rptr. 890] : "a summary judgment will stand if the supporting affidavits state facts sufficient to sustain a judgment and the counteraffidavits do not proffer competent and sufficient evidence to present a triable issue of fact. . . .' " (*de Echeguren* v. *de Echeguren* (1962) 210 Cal.App.2d 141, 146-147 [26 Cal.Rptr. 562].) The facts in the affidavits "shall be set forth with particularity" (Code Civ. Proc. § 437c). " ' . . . As the court stated in *House* v. *Lala, supra,* [180 Cal. App.2d 412 (4 Cal.Rptr. 366)], "[t]o satisfy the statutory requirement of 'particularity,' the movant's affidavits must state all the requisite evidentiary facts and not merely the ultimate facts. (*Southern Pacific Co.* v. *Fish,* 166 Cal.App.2d 353, 362 [333 P.2d 133] ; *Murphy* v. *Kelly,* 137 Cal.App.2d 21, 30-31 [289 P.2d 565].) Moreover, neither conclusions of law nor conclusions of fact are sufficient to satisfy the statutory requirement. (*Gardenswartz* v. *Equitable etc. Soc.,* 23 Cal.App.2d Supp. 745, 754 [68 P.2d 322].)" ' " (*de Echeguren, supra,* p. 157.)

In the light of these rules we look at the supporting declarations.[1] First, those of the moving parties, the defendants.

---

[1]Section 2015.5, Code of Civil Procedure, provides in effect that a declaration "under penalty of perjury" (as were the declarations in this case) may be used in lieu of affidavits wherever affidavits are required. (See *People ex rel. Savage* v. *Los Angeles Trust Deed etc.*

The Costello declaration is to the effect that plaintiff appeared at the hearing of the final account, was sworn and testified to the rendition by him of all the services specified in the bill of particulars; that the court made an order awarding plaintiff attorneys' fees; that the administrator transmitted to plaintiff a check for the amount awarded. A certified copy of the court's order is attached.

▆ Then comes the declaration of the court reporter giving a transcript of plaintiff's testimony at the hearing of the administrators' account.

Now we turn to plaintiff's declaration. In it, he does not purport to state any facts concerning the services rendered by him. He contents himself with denying that he "appeared" at the hearing and presented his claim to the court, denies that he testified to the rendition by him of *all* the services specified in the bill of particulars. He does not, however, deny that he testified as set forth in the reporter's transcript. He contents himself with claiming that the probate court had no jurisdiction to consider his claims or to make the order awarding him fees, which order he concedes was made. He denies payment to him of his fees but does not deny receipt of the administrators' check, which he has not cashed.

Having in mind that on a motion of this kind "The motion must be determined on facts set forth in the affidavits, and not on allegations of the complaint" (*Nini* v. *Culberg, supra,* p. 663) we find that plaintiff has set up no facts upon which the trial court could have determined that there were any issues of fact to be tried.

Plaintiff's alleged cause of action was on a *quantum meruit.* In the affidavits no contention is made that he did not render service to the administrators. In fact, it is conceded that he did. The issue, then, became one of law, namely, whether the administrators as individuals could be liable for services rendered by an attorney to them as administrators.

Plaintiff did not see fit to state in his declaration what those services were. The only evidence of services before the court was that contained in the reporter's transcript which defendants themselves placed before the court. ▆ Those services clearly appear to be ones rendered to the administrators for the benefit of the estate. These cannot be charged to the administrators personally. Section 911, Probate Code,

---

*Exchange* (1961) 190 Cal.App.2d 66 [12 Cal.Rptr. 144].) We will refer to the declarations of the parties interchangeably as declarations and affidavits.

provides: "Any attorney who has rendered services to an executor or administrator . . . may apply to the court for an allowance upon his fees; and on the hearing the court shall make an order requiring the executor or administrator to pay such attorney out of the estate such compensation, on account of services rendered up to that time. . . ." This section makes the attorney a party interested in the estate for the purpose of directly enforcing his claim for compensation. (*Estate of Hite* (1909) 155 Cal. 448 [101 P. 448]; *Estate of De Barry* (1941) 43 Cal.App.2d 715 [111 P.2d 728].) Moreover, the attorney has a right of appeal from an order of the probate court refusing to allow him attorneys' fees for services rendered. (*Estate of Merrill* (1946) 29 Cal.2d 520, 524 [175 P.2d 819].)

In *Chapman* v. *Pitcher* (1929) 207 Cal. 63 [276 P. 1008], the trial court sustained a demurrer, without leave to amend, to a complaint alleging a contract between an attorney and the executors for services to be rendered by him to them and the estate. In affirming the action of the trial court, the appellate court pointed out that prior to 1905 the attorney had no claim that he could enforce against the estate as he was not a person interested in the estate. But, by the amendments in that year of sections 1616 and 1619, Code of Civil Procedure (the substance of which now appears in Prob. Code, § 911) the attorney now has an interest in the estate to the extent of his compensation for services rendered to the administrators and the estate. The court then pointed out that the attorney had failed "to observe the procedure prescribed by statute which is necessary to establish a claim or demand against an estate of a deceased person, nor was an action commenced against the estate to establish the demand here attempted to be enforced by personal action against the defendants." (P. 69.)

"The effect of the statutory changes on the matter of the personal liability of an executor is noted in *Zagoren* v. *Superior Court*, 117 Cal.App. 548 [4 P.2d 279], at page 551, as follows: 'We are satisfied that since the amendment of sections 1616 and 1619 of the Code of Civil Procedure, in 1905 and 1909 (Stats. 1905, pp. 727 and 776; Stats. 1909, p. 987), an executor or administrator is not personally liable for the payment of attorney's fees in probate matters, but such fees are now proper expenses of administration, payable like other expenses of administration. This conclusion is not only irresistible from a reading of the statutes as amended, but also by

the following authorities: *Estate of Kelleher,* 205 Cal. 757 [272 P. 1060, 1063]; *Chapman* v. *Pitcher,* 207 Cal. 63 [276 P. 1008, 1010]....

" 'In *Estate of Kelleher, supra,* the court said: "The fees for attorneys' services, being a proper expense of administration are payable like other expenses of administration, and are *not a personal charge against the executor.*" ' (See also *Platnauer* v. *Forni,* 131 Cal.App. 393, 398 [21 P.2d 638].)" (*Houghton* v. *Coberly* (1962) 201 Cal.App.2d 820, 823-824 [20 Cal.Rptr. 489].)

Thus, whether or not there could be an issue of fact in the case as to whether plaintiff did or did not "appear" at the hearing of the account, or even testified as shown in the transcript, is completely immaterial. As plaintiff's only right to recover fees for his services is against the estate, it was his duty to present his claim to the probate court. "It is likewise settled that the right of an executor, administrator, or attorney for either, to ordinary compensation is absolute but does not accrue until an order for its payment is made." (*Estate of Johnston* (1956) 47 Cal.2d 265, 272 [303 P.2d 1].)

The same is true as to extraordinary compensation. Both statutory fees and extraordinary compensation are matters to be determined by the probate court, in its sound discretion. (See *Estate of Turner* (1942) 50 Cal.App. 2d 332, 335 [123 P.2d 66]; *Estate of Prather* (1920) 183 Cal. 314, 320 [191 P. 521].) If plaintiff presented his claim to the probate court, that court made him an award, for the amount of which he does not deny receiving a check, although he did not cash it. If he did not present his claim to the probate court, that fact would not give him a cause of action against the administrators personally. If he did not receive the check, his remedy is on the probate order, not against the administrators upon an alleged *quantum meruit.*

Plaintiff claims that he performed some of the services which the administrators of the estate are required to perform. He did not present by affidavit any facts by which the trial court could have determined that an issue of fact existed as to whether or not he did render such service. But if there were such issue, it would be immaterial. In the absence of an agreement by defendants to compensate him therefor (and he made no affidavit claiming that any such agreement was made) he has no right of action against the administrators personally therefor.

In his declaration plaintiff stated that to prevent

him from getting fees for extraordinary services (none of which he set forth by affidavit) defendants and Attorney Costello failed to ask for fees for extraordinary services by Costello and the administrators. Assuming that they did not so ask (and as they did not deny that they did not ask, that fact is admitted), such fact is immaterial. They were not required to ask for attorneys' fees for plaintiff. It was his duty under section 911 to ask for them himself.

Plaintiff contends that there is an issue of fact as to nonpayment for his services. No such issue exists. Defendants concede that other than the effect of transmitting the check to plaintiff for the amount allowed by the court (the receipt of which check was not denied by plaintiff) no payment has been made.

Plaintiff contends that he rendered the administrators "nonlegal" services. He presented to the trial court no issue of any such services. In his brief he indicates that there were legal services not directly connected with the probate but for the benefit of the heirs. Again he failed to present this issue to the trial court.

Plaintiff apparently did not understand that on a motion for summary judgment he was required to present to the court facts from which when compared with the facts presented by his adversary the court could determine that there were issues of fact to be later determined. Plaintiff's declaration was primarily devoted to his contention that he was not required to present his claim to the probate court.

■ Plaintiff contends that the court erred in requiring him to file a bill of particulars and that the bill of particulars should be stricken. *Knight* v. *Russ* (1888) 77 Cal. 410, 413, [19 P. 698], holds that in an action by an attorney for fees for his services "it is not necessary to set forth the items of the account in the complaint. It is sufficient to state the facts constituting the cause of action, in ordinary and concise language, and if the defendant desires further particulars, he may call for them, and they must be given him within a limited time. (Code Civ. Proc., §§ 426, 454.)'' (See also *Aydelotte* v. *Bloom* (1910) 13 Cal.App. 56, 58 [108 P. 877].)

■ It is rather interesting that plaintiff who in his briefs insists that "The bill of particulars was unlawfully exacted. It should be stricken and disregarded,'' now contends that because Costello in his declaration made reference to the bill of particulars when he stated that plaintiff at the hearing of the final account had testified to the rendition by

him of all the services enumerated by him in the amendment to the bill of particulars, the verified bill of particulars should now be considered as such an affidavit as on a motion for summary judgment is required by section 437c. As hereinbefore stated, plaintiff made no attempt on the hearing of the motion to set forth any *facts* as to his claim, and did not intend that his bill of particulars be considered on the motion. Although verified, it is not an affidavit complying with the last mentioned section which states that the affidavit "shall set forth facts showing . . . that a good cause of action exists upon the merits." ■ As we said in *Doyle* v. *Hibernia Bank* (1957) 156 Cal.App.2d 16, 20 [319 P.2d 412], "the question of issue finding is to be determined by the sufficiency of the affidavits of the parties." The bill of particulars has no more effect than if its claims were alleged in the complaint. We said in *Nini* v. *Culberg, supra* (183 Cal.App.2d at page 663), "The motion must be determined on facts set forth in the affidavits, and not on allegations of the complaint," nor, we would add, on the claims in the bill of particulars. In *Snider* v. *Snider* (1962) 200 Cal.App.2d 741, 755 [19 Cal.Rptr. 709], the court said, "In the summary judgment procedure, the party opposing the motion cannot rely on a verified pleading alone." The bill of particulars here was merely a verified pleading. *Snider* holds that the counter-affidavit of the plaintiff on a motion for summary judgment by the defendant "must set forth facts with particularity . . ." (P. 751.) There the court held that the affidavit of the plaintiff was insufficient because "In essence, the counteraffidavit only restates the ultimate facts alleged in the complaint," and "No evidentiary facts are alleged." (P. 751.) Plaintiff's counter declaration did not go even as far as did the counteraffidavit in *Snider*. Actually, plaintiff set forth in his affidavit no facts whatsoever concerning his claims.

Even if the bill of particulars could be considered as an affidavit on the motion (something to which plaintiff strongly objected, at all times up to the time when on oral argument in this court, his attention was called to the fact that he had not filed any affidavit of the facts), the services claimed therein were not substantially different from those stated by plaintiff in his testimony in the probate court. They clearly are services rendered to the administrators for the benefit of the estate, and compensable only as such. Plaintiff's contention that the recital of services shows that he was rendering services other than attorney's services is not supported by

any showing of facts. The contention that he rendered services which the administrators should have rendered and which would entitle him to share in administrators' extraordinary fees is supported neither by any showing of facts nor by the law. ▮▮▮ The division of fees between successive attorneys is in the sound discretion of the probate court. (*Estate of Buchman* (1955) 138 Cal.App.2d 288, 234 [291 P.2d 547].) See *Dobbins* v. *Title Guar. & Trust Co.* (1943) 22 Cal.2d 64, 70 [136 P.2d 572], holding that even though there was an agreement between coexecutors of a will to divide the compensation, the order awarding the compensation to one executor only (the other executor having failed to petition for a share) was final and conclusive and an action against the coexecutor for a part of the compensation received by him would not lie.

Plaintiff failed to meet the requirement that the party opposing a motion for summary judgment must disclose what the evidence will be to show that there is a real issue of fact to be tried. ▮▮▮ Here it appears that there were only issues of law to be considered. "Where on a motion for summary judgment the issues are of law only it is the duty of the trial court to determine those issues." (*Doyle* v. *Hibernia Bank, supra,* 156 Cal.App.2d 16, 20.)

Nothing contained herein shall deny plaintiff's right to the sum of $1,251.26 awarded plaintiff by the probate court.

The judgment is affirmed. Defendants will recover costs.

Sullivan, J., and Molinari, J., concurred.